UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HECTOR DIAZ JR.,

        Plaintiff,                    CASE NUMBER: 10-13419
                                           HONORABLE VICTORIA A. ROBERTS

v.

G. REYNOLD SIMS & ASSOCIATES, P.C.,

        Defendant.
_____/

## ORDER

**I.    INTRODUCTION**

Plaintiff, Hector Diaz, filed a Complaint against Defendant, G. Reynold Sims & Associates, P.C. ("GRS"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Michigan Occupational Code, M.C.L. 339.915. Diaz's claims against GRS stem from GRS's alleged garnishment of his 2009 State Income Tax Refund in an attempt to collect on a debt that had already been settled by the parties and paid off in full pursuant to the terms of the Settlement Agreement. Although GRS ultimately refunded the income tax money, Diaz states that it did not do so until after he hired an attorney and filed suit against it. Diaz seeks "statutory, actual, emotional and financial damages and also seeks his attorney fees and costs." (Complaint at ¶ 29, ¶ 32).

The Court **DENIES** Defendant's motions.

**II.    BACKGROUND**

Chase Manhattan Bank issued Diaz a credit card in February 2003. Diaz

charged items to the card but stopped making payments in February 2004 and went into default. CACV of Colorado, LLC ("CAVC") purchased the account and placed it for collection of the balance owed, $16,890.04, with Defendant GRS.

CAVC, through GRS, filed a Complaint against Diaz in April 2009 and acquired a Judgment against him in August 2009. GRS issued a Non-Periodic Garnishment against Plaintiff's bank account at Bank of America and an Income Tax Refund Garnishment in an attempt to collect the balance due. The bank notified Diaz of the Bank of America garnishment. At that time the Bank of America garnishment had attached to two of Diaz's accounts; a total of $4,138.69 had been garnished from the accounts.

The parties negotiated a settlement, agreeing to resolve the entire debt for the amount that had already been garnished. In December 2009, CAVC, through GRS, moved to set aside the judgment, and dismiss the case against Diaz, stating that the matter had been resolved. CAVC also filed a release of the income tax garnishment, which stated that "[a]ny amounts withheld as of 12/20/2009 shall be returned to the defendant and any further withholdings shall be discontinued." In February 2010 the 61st District Court entered an order setting aside the judgment against Diaz and dismissing the case against him, with prejudice.

Despite the tax garnishment release, in May 2010 the State of Michigan notified Diaz of its intent to withhold his tax return. The State forwarded a check for $1,077.00 to GRS, the amount of Diaz's refund. GRS says that it was forced to cash the check sent to it by the State because it was combined with the refund of another individual and that Diaz's funds have since been returned to him. GRS also contends that the Notice

of Income Tax Refund Used for Debts, that was sent to Diaz, "clearly stated that the Plaintiff was to himself notify the State of Michigan that the debt was extinguished. The notice states 'if a garnishment release, satisfaction of judgment, is received in our office within the 28 days, we will issue a full refund to you.'" (Def.'s Motion at 10) (brackets and ellipsis omitted).

Diaz says that he contacted a GRS representative regarding the May 2010 tax garnishment and that the representative told him that GRS would not refund the money. He says that "[t]he debt and lien was purportedly extinguished in December, 2009, indicated by a letter sent by Defendant" but "[t]his turned out to be false." (Pl.'s Response at 7-8). Diaz also says that "[w]hen asked to refund the money, Defendant's agents told Plaintiff's wife that they did not deserve the money and should be happy with the settlement they got." (Pl.'s Response at 8). Rosy Diaz, Plaintiff's wife, and Diaz, submitted an affidavit stating that they repeatedly called GRS and were told different things regarding the tax refund. They say, "[o]ften we would be told the check is in the mail or being Federal Expressed. Other times we were told that we did not deserve the money." (Affidavit of Hector Diaz, Jr. and Rosy Diaz at ¶ 5 ; Pl's Response Exh. C)  At one point a GRS agent allegedly told them that the creditor had to refund the money. (*Id.* at ¶ 6)  Diaz admits that GRS ultimately refunded the money, but says this happened only after he hired an attorney and filed suit against Defendant.

Diaz filed his Complaint on August 26, 2010, over three months after his tax refund was garnished. He alleges various violations of the FDCPA and the Michigan Occupational Code, the FDCPA's state law counterpart. The Complaint alleges GRS violated §§ 1692e and 1692f of the FDCPA, by making false or misleading

3

representations regarding a debt and engaging in unfair debt collection practices, and subsections (e) and (f) of the Occupational Code, by making misleading statements and misrepresentations about a debt and in order to collect a debt.

## III. ARGUMENTS

### 1. Defendant's Motions

#### A. Motions to Dismiss under Fed. R. Civ. P. 12(b)(6) and for Summary Judgment under Fed. R. Civ. P. 56(c)

GRS labels its motion to dismiss as a motion for judgment on the pleadings for failure to state a claim. However, a motion for judgment on the pleadings is premature, since no answer has been filed and the pleadings are still open. *See* Fed. R. Civ. P. 12(c) ("After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings."); *Season-All Industries*, *Inc. v. Turkiye Sise Ve Cam Fabrikalari*, *A.S.*, 425 F.2d 34, 36 (3d Cir. 1970) ("Since no answer had been filed to the complaint the motion for judgment on the pleadings was improper as such, and it was rightly treated by the court as a motion for summary judgment."). Accordingly, the Court uses the 12(b)(6) standard in evaluating this motion.

GRS says Diaz's Complaint should be dismissed for failure to state a claim upon which relief can be granted. GRS argues that the FDCPA only applies to "consumer debt" and "[a]s of December [2009], the debt of Mr. Diaz was extinguished per the settlement of the parties." GRS says, at the time the facts leading to this lawsuit occurred, "[t]here were no further amounts due to the Defendant as the final settlement. In fact, the debt was paid prior to the allegations made by the Plaintiff and at all times

pertinent hereto, the Plaintiff did not owe any money obligation to the Defendant, and as such, the FDCPA cannot apply." (Br. In Support of Def.'s Motion at 20). GRS contends that because the debt was settled as of May 2010, when Diaz's tax refund was garnished, GRS's conduct cannot be viewed as an attempt to collect a "debt," as is required for the FDCPA to apply.

GRS also says that Diaz's Complaint must be dismissed for lack of subject matter jurisdiction because the only federal law sued under, the FDCPA, does not apply to Diaz's claim, and without original jurisdiction the Court does not have supplemental jurisdiction over the state law claim.

GRS also moves for summary judgment. This motion is based on GRS's interpretation of the FDCPA as inapplicable because Diaz's debt was extinguished in December 2009. According to GRS, "Plaintiff is not a 'consumer' and Defendant is not a 'debt collector' as defined in 15 U.S.C. § 1692a(5) and (6) or Michigan Law." (*Id.* at 24). In support of summary judgment, GRS states that GRS did not continue to garnish money from Diaz and that there is no dispute that GRS released the tax garnishment, set aside the judgment, and dismissed the district court case as a result of the settlement. GRS argues that Diaz had possession of the court documents releasing him from future liability on the debt and could have forwarded the documents to the State of Michigan to ensure a refund. It says, "[t]here is no indication that the Plaintiff took any steps to affirmatively notify the State of Michigan of the release or the dismissal evidencing the payment of the debt." (*Id.* at 25).

Finally, GRS says that if the Court denies the motions for dismissal and summary judgment, it requests a more definite statement of the claim under Fed. R. Civ. P. 12(e).

5

GRS argues that it cannot prepare a responsive pleading because Diaz's Complaint is too vague and ambiguous. GRS says:

> Plaintiff's Complaint simply states generic claims under the State and Federal Fair Debt Collection Acts leaving out any specifics as to the details behind the viability of said claims or how said claims arose. (Complaint Paragraphs 23-31). Plaintiff fails to specifically allege which acts purported to have been done by Defendant violate the laws referenced and how such acts provide the Plaintiff recourse against the Defendant under said laws.

*Id.* at 26

### 2. Plaintiff's Response

Diaz responds that as long as Defendant continued to take action on the alleged debt by garnishing his tax refund, a "debt" still existed for purposes of the FDCPA. He says that the debt was extinguished on paper, but not in fact. Diaz contends, in the alternative, even if GRS's conduct was post-debt, it arose in connection with the debt, and falls under the protection of the FDCPA.

In response to GRS's request for a more definite statement, Diaz contends that his Complaint meets the requirements of Fed. R. Civ. 8(a) and is bolstered by the affidavits attached as exhibits for factual support.

## IV. ANALYSIS

### 1. Legal Standard

#### A. Motion to Dismiss

A party is entitled to dismissal under Fed. R. Civ. P. 12(b)(6) "'only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief.'" *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d

564, 570 (6th Cir. 2008) (quoting *Downie v. City of Middleburg Heights*, 301 F.3d 688, 693 (6th Cir. 2002)). The Court treats all well-pleaded allegations in the Complaint as true. *Id.* However, to survive a motion for dismissal, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must include in the Complaint "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, — U.S. ----, 129 S.Ct. 1937, 1949 (2010). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the Complaint has alleged- but has not 'shown' - 'that the pleader is entitled to relief.'" *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

### B.  Motion for Summary Judgment

The Court will grant summary judgment in favor of the moving party if that party establishes that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]hen a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e)(2). The Court views the evidence in favor of the non-moving party. *Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 138 (6th Cir. 1993). However, the evidence supporting the plaintiff's position must be more than a mere scintilla; it

must be sufficient for the jury to reasonably find in favor of the plaintiff. *Liberty Lobby*, 477 U.S. at 252.  "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict- whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Id.* (citation and internal quotation marks omitted) (emphasis in original).

### 2. Defendant's interpretation of the FDCPA is too restrictive and is refuted by the plain language and purpose of the statute.

Congress enacted the FDCPA, 15 U.S.C. § 1692 *et seq.*, "to eliminate the abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id.* § 1692(e).  Section 1692e prohibits a debt collector from using false, deceptive, or misleading representations or means to collect a debt. *Id.* § 1692e.  Section 1692f prohibits a debt collector from using unfair or unconscionable means to collect or to attempt to collect a debt. *Id.* § 1692f.

The definitions of "consumer," "debt," and "debt collector" are set out in § 1692a.  A "consumer" is "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).  A "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced by judgment." *Id.* § 1692a(5).  And, a "debt collector" is "any person who uses any instrumentality of

interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another...." *Id.* § 1692a(6).

GRS is correct that the FDCPA applies only when the prohibited practices are used in an attempt to collect a debt. *See, e.g., Mabe v. G.C. Servs. Ltd. P'Ship*, 32 F.3d 86, 88 (4th Cir. 1994) ("Congress enacted the FDCPA to protect consumers from unfair debt collection practices. Consequently, a threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt.'") (internal citation omitted). The issue here is whether the FDCPA also applies when a debt has been legally extinguished, but a defendant, erroneously or otherwise, still allegedly attempts to collect on the debt. This appears to be an issue of first impression in this Circuit; neither party points to Sixth Circuit precedent on the issue, nor do they cite any case law at all. However, the Court can be guided by the recent decision of a district court in Pennsylvania which confronted the same issue.

In *Fetters v. Paragon Way, Inc.*, No. 10-00904, 2010 WL 5174989, at * 1 (M.D.Pa. Dec. 15, 2010), the plaintiff, who was indebted to the defendant Collins Financial Services ("Collins"), settled the debt with Collins and paid Collins the settlement amount in full. However, the account was never listed as closed and defendant Paragon Way, Inc. ("Paragon") acquired the debt from Collins after Collins failed to update its records to indicate that the debt had been satisfied. *Id.* Although the plaintiff contacted Paragon to explain that the debt had been satisfied, Paragon insisted that the account was unpaid and continued to attempt to collect. *Id.* The plaintiff filed suit against Collins and Paragon under the FDCPA and various state laws. *Id.* The

9

defendants filed a motion for judgment on the pleadings, arguing "that the FDCPA cannot apply where a debt has already been settled and closed," *id.* at *2, the same argument GRS now makes. Specifically, the defendants argued that "'the payment of the debt by Plaintiff forever extinguishes the debt and closes the matter, removing it from the ambit of the FDCPA.'" *Id.* (citation omitted).

The *Fetters* court observed that "'[a] threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a debt.'" *Id.* (quoting *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1167 (3d Cir. 1987)). However, the court also noted that a "debt," as defined in the FDCPA, is not only an *obligation* of a consumer to pay money arising out of a transaction, but also an *alleged obligation*. *Id.* (emphasis added). The court emphasized that the role of the courts in interpreting statutes is to give effect to congressional intent and that intent is expressed through the ordinary meaning of statutory language. *Id.* at *3; see also Barany-Snyder v. Weiner*, 539 F.3d 327, 332-33 (6th Cir. 2008) ("When interpreting the FDCPA, we begin with the language of the statute itself.") (citation and internal quotation marks omitted). The court found that the statutory language defining "debt" is plain and unambiguous, requiring no further inquiry. *Id.* The court held, "when a debt collector asserts that there is an obligation to be paid, whether true or not, the protections of the FDCPA are triggered. *Id.* The court also noted that "[t]his interpretation fits with the broader purpose of the FDCPA of deterring unfair and deceptive debt collection practices." *Id.* It said, "[the FDCPA] is a remedial statute and its language should be construed broadly, so as to effect its purpose." *Id.* (citations and internal quotation marks omitted).

GRS argues that it did not attempt to collect on the extinguished debt by accepting Diaz's tax refund. It says that it was up to Diaz to inform the State that the debt had been settled and that GRS eventually returned the refund money to Diaz. However, these facts are disputed. In his Complaint, Diaz says that GRS was responsible for garnishing his income tax refund and that GRS was obligated to inform the State of the settlement and dismissal of the case against him. He also says that GRS cashed the check and that various GRS agents informed him that he was not entitled to receive the refund, in contravention of the parties' settlement agreement, or that it was in the mail, when in reality it was not.

At the time the Complaint was filed, the refund money had still not been returned to Diaz by GRS. Diaz claims it was not until GRS was served with the Complaint that it returned the refund money and that he has suffered actual damages in the form of attorney fees and costs, as well as emotional damages, from GRS's conduct. This conduct, Diaz contends, amounts to false, deceptive, misleading and unfair debt collection practices. The *Fetters* court held that where a plaintiff alleges that a defendant continued to act in such a manner, even after a debt had been legally extinguished and the consumer had no further financial obligation to the defendant, the FDCPA applies. *Id.* ("Such a situation logically would be covered by the FDCPA's broad remedial purpose of protecting consumers from being harassed-even after payment is made.").

GRS provides, as an attachment to its motions, a Notice of Income Tax Refund Used for Debts, stating that Diaz can send a garnishment release or a satisfaction of judgment to the State within 28 days to be issued a full refund. However, this notice is

11

not conclusive evidence that GRS had no obligation to inform the State of the settlement and release, nor does it release GRS from liability under the FDCPA for the alleged misconduct of refusing to return the money to Diaz, telling him that he was not entitled to it.

The language of the Ninth Circuit, in *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982), supports the holding in *Fetters*. In *Baker*, the Ninth Circuit opined,

> The [FDCPA] is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists. 1977 U.S.Code Cong. & Adm.News, 1695, 1696.
> ***
> Further, the legislative history supports the contention that a debtor has standing to complain of violations of the Act, regardless of whether a valid debt exists. Representative Frank Annunzio, chairman of the subcommittee that reported out the bill, stated during debate "(t)hat every individual, whether or not he owes the debt, has a right to be treated in a reasonable and civil manner." 123 Cong,Rec. 10241 (1997).

*Id.*

The reasoning of *Fetters* is persuasive. The plain language of the FDCPA, in particular the definitions of "debt" as an "*alleged obligation*," "consumer" as "any natural person...*allegedly obligated* to pay any debt," and "debt collector" as "any person who...attempts to collect...debts...*asserted to be owed or due* another," and the legislative history of the FDCPA, preclude Defendant's restrictive interpretation of the Act. The Sixth Circuit noted that "the FDCPA is 'extraordinarily broad,' crafted in response to what Congress perceived to be a widespread problem." *Weiner*, 539 F.3d at 333 (citing *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)). GRS may not have directly asserted that Diaz still owed on the original debt or that it would keep his garnished tax refund because he was still obligated to pay on the original debt.

However, if a jury believed Diaz's version of events, it could find that GRS's actions amounted to such assertions. Likewise, because the FDCPA is applicable, Defendant's subject matter jurisdiction arguments fail, and this Court has supplemental jurisdiction over the state law claim.

> **2.   Defendant is not entitled to a more definite statement of the claim because the Complaint is not so vague and ambiguous that Defendant cannot reasonably respond; the underlying factual details of the claim will be brought out during the discovery process.**

Defendant requests a more definite statement of the Complaint if the Complaint is not dismissed. Fed. R. Civ. P. 12(e) governs:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Under Fed. R. Civ. P. 8(a)(2), a Complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court, in *Twombly* and *Iqbal*, set forth the standard governing sufficiency of a Complaint under Fed. R. Civ. P. 8. The Court stated that Rule 8 does not require detailed factual allegations but it requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. The Court explained:

> A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

> face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Id.* (internal citations and brackets omitted). The Court warned that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). To state a claim for relief, the plaintiff's Complaint must allege facts that raise a right to relief above the speculative level, assuming that all of the factual allegations in the Complaint are true (even if doubtful in fact). *Twombly*, 550 U.S. at 555.

Notably missing from this Supreme Court precedent are any requirements for the format of the factual and legal allegations. In a case decided before *Twombly* and *Iqbal*, *Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002), the Seventh Circuit expressly held that no particular format is required. The court stated,

> The federal rules require (with irrelevant exceptions) only that the complaint state a claim, not that it plead the facts that if true would establish (subject to any defenses) that the claim was valid. All that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer.

*Id.* at 439 (internal citation omitted); *see also Mueller v. Rayon Consultants, Inc.*, 170 F.Supp. 555, 558 (D.C.N.Y. 1959) ("There is no requirement that the pleadings state facts in a certain manner or any requisite number."). *But see Riley v. Vilsak*, 665 F.Supp.2d 994, 997 (W.D.Wis. 2009) (*Higgs* called into doubt by *Twombly* and *Iqbal*).

While the Complaint's "Causes of Action" section is devoid of facts, Diaz devotes an entire section of the Complaint to "factual allegations." (Complaint, ¶ 12- ¶ 22). GRS appears to take issue with the fact that Diaz does not set out which particular facts

support each legal allegation, and how so. But this information can be gleaned through the discovery process. *See, e.g., Swierkiewicz v. Soreman*, 534 U.S. 506, 512 (2002) ("'The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court.'") (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202, p. 76 (2d ed. 1990)); *Communities for Equity v. Michigan High School Athletic Ass'n*, 26 F.Supp.2d 1001, 1009 n. 9 (W.D.Mich. 1998) (motions for a more definite statement are disfavored; their purpose is better served by discovery); *Erikson v. Hunter*, 932 F.Supp. 1380, 1384 (M.D.Fla. 1996) (same); *Wills v. McLean Trucking Co.*, 76 F.R.D. 32, 33 (D.C.Tenn. 1977) ("The details of plaintiffs' claim are available to the defendant through utilization of the pretrial discovery techniques.... Where, as here, a claim meets the requirements of Rule 8(a)(2), Federal Rules of Civil Procedure, the Court will not require the plaintiffs to make a more definite statement in their complaint.").

> In their treatise on Federal Practice and Procedure, Wright and Miller observe,
>
> [R]equests for more definite statements often result in the pleading of matters that normally are brought forward only during the discovery phase. Since the theoretical overall scheme of the federal rules calls for relatively skeletal pleadings and places the burden of unearthing the underlying factual details on the discovery process, federal courts have been properly desirous of avoiding any possibility that the permissive allowance of Rule 12(e) motions seeking detailed factual averments will shift the burden of fact elicitation from the discovery phase back to the pleadings, with a resulting delay in joinder of issue and resolution of the merits. Therefore...many cases have denied Rule 12(e) motions on the ground that the information requested was properly the subject of the discovery process, and some federal courts have even treated Rule 12(e) motions as discovery applications.

5 C. Wright & A. Miller, Federal Practice and Procedure § 1376 (3d ed. 2010) (internal citations omitted).

A Rule 12(e) motion should not be granted unless the Complaint "is so vague or ambiguous that the party cannot reasonably prepare a response." This Complaint is neither vague nor ambiguous. Diaz includes a detailed factual allegations section. Common sense inferences (backed by utilization of the discovery process) will reveal how–and if–the facts alleged support the violations alleged. Diaz included enough detail in his Complaint to raise his right to relief above the level of mere speculation. The Court **DENIES** GRS's motion for a more definite statement.

## V. CONCLUSION

All of Defendant's motions are **DENIED.** Defendant must answer Plaintiff's Complaint on or before January 13, 2011.

**IT IS ORDERED.**

s/Victoria A. Roberts<br>
Victoria A. Roberts<br>
United States District Judge

Dated: January 4, 2011

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 4, 2011.
>
> s/Linda Vertriest
> Deputy Clerk